IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Najat Elsayed,** | § | |
| | § | |
|   Plaintiff, | § | |
| | § | C.A. No._____ |
|      vs. | § | |
| | § | |
| **The University of Houston,** | § | |
| | § | |
|   Defendant. | § | (JURY TRIAL DEMANDED) |

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

    COMES NOW Plaintiff, Najat Elsayed, filing her Original Complaint complaining of Defendant, The University of Houston, and in support thereof would show as follows:

### I.
### JURISDICTION, PARTIES AND VENUE

1.    This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Family and Medical Leave Act ("FMLA") and both statutes' related anti-retaliation regulations.

2.    Najat Elsayed ("ELSAYED") or ("Plaintiff") resides in Houston, Harris County, Texas. Plaintiff is Islam and female and is protected by Title VII. Plaintiff was at all relevant times an employee within the meaning of the applicable statutes.

3.     Defendant, University of Houston, is a public university located in Houston, Texas with its main location at 4800 Calhoun Road, Houston, TX 77004.  Defendant was at all times Plaintiff's employer within the meaning of Title VII.

4.     Defendant engaged in an industry affecting commerce and employed more than fifteen (15) regular employees.

5.     The employment practices alleged to be unlawful herein were committed within the Southern District of Texas, Houston Division.  Venue is appropriate in this Court.

**V**ICARIOUS **L**IABILITY--**R**ESPONDEAT **S**UPERIOR

6.     Whenever in this complaint it is alleged that the Defendant did any act or thing, it is meant that the Defendant's supervisors, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's supervisors, agents, servants, employees, or representatives.

7.     The acts of management including but not limited to Connie Kemp ("Kemp"), Sal Loria ("Loria"), Janette Carson ("Carson"), Izzy Anderson ("Anderson") and Melanie Morgan ("Morgan") were performed while in the employment of Defendant, to further Defendant's business, to accomplish the objective for which these supervisory employees were hired, and within the course and scope of that employment or within the authority delegated to these employees.  Kemp, Loria, Carson, Anderson, and Morgan were given supervisory authority over Plaintiff.  As such, Kemp, Loria, Carson, Anderson, and Morgan were given complete day-to-day control over the work conditions, duties, and all other aspects of Plaintiff's employment.

## II.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on or about June 16, 2010. In that Charge, No. 460-2010-03043, and any amendments and/or attachments thereto, Plaintiff asserted that Defendant discriminated against her because of her sex and religion and retaliated against her for complaining about such discrimination.

9. After investigating Plaintiff's Charge, the EEOC issued Plaintiff a RIGHT TO SUE LETTER dated July 18, 2011. Plaintiff has exhausted her administrative remedies and files this suit within the statutory limitations period.

## III.
## FACTUAL BACKGROUND

10. In or about October 2007, Plaintiff was hired at University Of Houston ("UH" or "Defendant") as a Financial Aid Officer.

11. Plaintiff, married with no children, personally observed that management openly disfavored women because of their pregnancy, childbirth, or a medical condition related to pregnancy or childbirth.

12. During a staff meeting in March of 2009, Executive Director of Scholarships and Financial Aid Sal Loria commented about his then-pregnant secretary that he was "disappointed" and would need her to take her laptop into the labor room.

13. Assistant Director of Loans Tina Chargois openly confessed that Brittany (lnu), who was out on maternity leave, "didn't look pregnant at the interview. If I knew she was pregnant, I would have never hired her."

14.     For at least nineteen (19) months, ELSAYED admirably fulfilled her duties as assigned and received high praise from her superiors -- until she announced that she was pregnant with her first child.

15.     In May of 2009, ELSAYED informed her immediate supervisor, Janette Carson, that she was almost 3 months pregnant. Carson's response was an immediate and unenthusiastic: "Sh_t! Sh_t! Sh_t!"

16.     Before ELSAYED announced her pregnancy, management allowed her to work from home on occasion.  After ELSAYED announced her pregnancy, she was denied the opportunity to work from home.

17.     Much later in her pregnancy and when it was difficult for ELSAYED to get around, she again asked management if she could work from home to accommodate her pregnancy, she was again denied the opportunity to work from home.

18.     Too and before her pregnancy, ELSAYED typically worked some exorbitant hours.  After announcing her pregnancy, she felt the need to maintain those long hours so as not to give management the occasion to complain.

19.     Unfortunately, ELSAYED's health began to fail.  Consequently, her doctor insisted that she work no more than 40 hours per week.  Initially and reluctantly, management agreed to allow ELSAYED to work no more than 40 hours per week.  This accommodation did not last long. Soon thereafter, management forced ELSAYED to work beyond 40 hours a week.  Conversely, management penalized (e.g., docking her pay or threats thereto) ELSAYED, an exempt employee, when her body simply would not permit her to work hours greater than 40 per week.

20. At the end of 2009, ELSAYED applied for the Assistant Director of Customer Service position. Anderson and Loria called ELSAYED into Loria's office to inform her that Morgan was selected for the position. They added that they would like to place ELSAYED in a different position but were trying to decide whether or not to do so before or after she returned from maternity leave.

21. ELSAYED congratulated Morgan on the Assistant Director of Customer Service position and reassured Morgan that she would support Morgan in this position. Morgan replied that she knew that ELSAYED would not be there long.

22. On or about December 3, 2009, ELSAYED asked Morgan if she could work from home until she went into labor. At this point, ELSAYED was two weeks late in delivery. Morgan denied ELSAYED's request.

23. On or about December 15, 2009, ELSAYED again asked Morgan if she could work from home until she went into labor. Morgan denied ELSAYED's request.

24. On December 15, 2009, ELSAYED went on maternity leave.

25. Management repeatedly and impatiently asked ELSAYED's peers, "Has she had the baby yet?" and "What is she waiting on?"

26. Anderson commented that she [Anderson] carefully planned her delivery so that she could return to work quickly.

27. During ELSAYED's leave following the birth of her child, Anderson phoned her and threatened that if she did not return to work early from leave ELSAYED would not have any opportunities in Anderson's unit and that ELSAYED would have to seek advancement opportunities in other units.

28. In the Spring of 2010, Morgan told others during a staff meeting, "I don't think Najat [ELSAYED] is going to be coming back so we are going to start interviewing for her current position too."

29. Upon ELSAYED's return from leave, she was greeted with hostilities from management that would continue. For instance, when ELSAYED asked for a private location in her building to pump breast milk, management responded impatiently to her request. The room made available to ELSAYED was not in ELSAYED's building but in a separate location. Too, when ELSAYED walked the distance to and from said location designated as a place for her to pump breast milk, management reacted violently to the time away from work that ELSAYED spent to pump such. There was no pleasing management. Torn, ELSAYED used her vehicle to pump breast milk rather than endure the wrath of Anderson and Morgan.

30. What should have been a happy time in the life of this new mother was anything but.

31. ELSAYED made complaints to management and human resources about the maltreatment.

32. Before ELSAYED's complaints, her department had already been plaqued by discrimination and retaliation claims involving Loria.

33. Before ELSAYED's complaints, at least one employee complained directly to UH President Renu Khator about such discrimination and retaliation.

34. ELSAYED complaints only intensified management's hostilities towards her.

35. ELSAYED began being singled out for disciplinary action that lacked merit.

36. ELSAYED's meetings and interactions with management grew more intense, rude and insulting.

37. To add insult to injury, Sophia Garza made a discriminatory remark about Arabs and Muslims in ELSAYED's presence. Garza stated, "All of them are smelly and abusive to their women." Thereafter, Garza while laughing, swerved her car towards ELSAYED in the parking lot as though she was going to hit her, and later sarcastically apologized. ELSAYED reported the discriminatory remark and threat to Morgan. Morgan replied, "Oh, I am sure she didn't mean it. She has a dry sense of humor."

38. ELSAYED was suspended without merit.

39. Finally, on June 4, 2010, Plaintiff was terminated.

## IV.
## CAUSES OF ACTION

A. **DISCRIMINATION PURSUANT TO TITLE VII**

40. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

41. Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of Title VII, by intentionally interfering with Plaintiff's performance of her employment because of her sex (pregnancy) and religion (Islam).

42. This intentional interference consisted of discrimination of a continuous nature.

43. Defendant, through its agents, supervisors, or employees discriminated against Plaintiff which led to the loss and impairment in whole or part, of the wages, benefits, privileges, and terms and conditions of Plaintiff's employment.

44. The above-described acts on Defendant's part caused Plaintiff substantial injury and damage.

**B.**    **FAMILY AND MEDICAL LEAVE ACT**

45.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above and incorporate the same by reference as though fully set forth herein.

46.    Plaintiff was qualified for, and requested, leave pursuant to the Family and Medical Leave Act ("FMLA") from Defendant.  Defendant violated Plaintiff's rights under the FMLA by interfering with, restraining, and/or denying her the exercise of or the attempt to exercise her rights under the FMLA and by retaliating against ELSAYED following a medical leave of absence under the FMLA.

47.    Plaintiff seeks all rights and remedies available to her including but not limited to reinstatement, actual and compensatory damages, and exemplary damages.

**C.**    **RETALIATION PURSUANT TO TITLE VII and FMLA**

48.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above and incorporate the same by reference as though fully set forth herein.

49.    After complaining to management of maltreatment, Plaintiff was subsequently and repeatedly harangued, ignored, disciplined, and ultimately terminated.

50.    As herein alleged, Defendant illegally retaliated against Plaintiff because she complained of maltreatment.  Defendant had no legitimate business reasons for any of such acts.  Each act of retaliation is in violation of Title VII and FMLA's anti-retaliation provision.

51.    As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination and retaliation against her, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

52. The above-described acts on Defendant's part were undertaken in violation of Title VII and FMLA and proximately caused Plaintiff substantial injuries and damages.

## V.
## JURY DEMAND

53. Plaintiff requests that this action be heard before a jury.

## VI.
## DAMAGES

54. Defendant's conduct constitutes violations of statutory and/or common law. Such unlawful conduct seriously affects Plaintiff in her occupation, trade and business. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer humiliation, mental anxiety and stress, and other damages. Plaintiff has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies and procedures of Defendant. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages in an amount to be proved at trial.

55. Because of Defendant's unlawful and tortious conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent her in these causes of action Plaintiff has agreed to pay her attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

56. Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at trial.

57. Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks post-judgment

interest at the maximum rate allowed by law in the event that Defendant do not promptly tender damages assessed against them and to avoid unjustly enriching Defendant.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

a. Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which discriminates on the basis of sex, religion and in retaliation thereof.

b. All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Punitive damages in an amount above the minimum jurisdictional limit of the Court, if applicable;

e. Reasonable attorney's fees, with conditional awards in the event of appeal;

f. Pre-judgment interest at the highest rate permitted by law;

g. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

h. Costs of court and expert witness fees incurred by Plaintiff in the preparation and

prosecution of this action; and

i. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully submitted,

*/s/ Katrina Patrick*

_____

**Katrina Patrick**
Attorney-in-Charge
State Bar No. 00797218
Federal Bar No. 22038
530 Lovett Street
Houston, Texas  77006
Telephone:  (713) 796-8218
Facsimile:  (713) 533-9607

**ATTORNEY FOR PLAINTIFF**
**Najat Elsayed**