**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **Najat Elsayed,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **C.A. No.4:11-cv--3636** |
| **v.** | § | |
| | § | |
| **The University of Houston,** | § | |
| | § | |
| **Defendant.** | § | **(JURY TRIAL DEMANDED)** |

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PARTIAL [SIC] MOTION TO DISMISS**

---

TO THE HONORABLE LEE H. ROSENTHAL:

COMES NOW Plaintiff, NAJAT ELSAYED, and files this Response to Defendant's Partial [Sic] Motion To Dismiss. Plaintiff asks the Court to deny Defendant's Partial [Sic] Motion To Dismiss (hereinafter "*Motion Dkt #7*") in whole and for good cause would show the following:

## I.  Nature And Stage Of Proceeding

1.     This case shines a very bright and uncomfortable light on the illegal myths and stereotypes perpetuated by employers against women because their pregnancy, childbirth, or a medical condition related to pregnancy or childbirth.

Defendant, University of Houston ("UH"), subjected Plaintiff to incredibly vicious stereotypes and the denial of workplace benefits and accommodations because of her pregnancy and subsequent childbirth.

2.     For at least nineteen (19) months, Elsayed admirably fulfilled her duties as assigned and received high praise from her superiors -- until she announced that she was pregnant with her first

child. Management's response was quick and pointed -- Sh*t! Sh*t! Sh*t!" *Dkt #1, para 15.* And that was only the beginning.

3.      Elsayed took leave pursuant to the FMLA and gave birth.  She returned to work in approximately March of 2010.  Elsayed was terminated in June of 2010.  Before her termination and in those three (3) short months, Elsayed was: written up, denied the opportunity to work from home same as her peers, demeaned, discouraged from pumping breast milk for her infant, suspended, and sorely resented.

## II. <u>Statement of the Issues and Standard of Review</u>

A motion to dismiss under FRCP 12(b)(6) is appropriate only if the plaintiff has not provided fair notice of its claim and factual allegations that – when accepted as true – are plausible and rise above mere speculation.  See *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  When there are nonconclusory factual allegations, the court must assume that they are true and then determine whether they plausibly give rise to an entitlement to relief.  The court should not make findings of fact or conclusions of law when ruling on an FRCP 12(b)(6) motion.  See FRCP 52(a)(3); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.2007).

## III. <u>Arguments and Authorities</u>

Now, UH complains that Elsayed: (1) failed to exhaust her administrative remedies on her Title VII Religious Discrimination Claim, (2) failed to state a FMLA Interference Claim and (3) cannot recover punitive damages.

**(1) UH IS NOT ENTITLED TO DISMISSAL ON ELSAYED'S RELIGIOUS DISCRIMINATION CLAIMS, <u>THOUGH ELSAYED VOLUNTARILY DISMISSES SUCH A CLAIM</u>**

Not being a fan of convoluted lawsuits, the undersigned has been given permission by Elsayed to dismiss the religious discrimination claim against UH.

Notwithstanding such, Elsayed's religious discrimination claim **was timely submitted to the EEOC in June of 2010 – some 12 days after her illegal termination.**

On or about June 16, 2010, Elsayed filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against UH. *See Exhibit A.* On the same time, she completed the Equal Employment Opportunity Commission Intake Questionnaire. *See Exhibit B.* Under the section "What is the reason (basis) for your claim of employment discrimination?", Elsayed typed "Muslin/Islam: Arab Lebanese." *See Exhibit B, page 2, Section 4.* Under the section "What happened to you that you believe was discriminatory?", Elsayed typed "See attached documentation." *See Exhibit B, page 2, Section 5.* Elsayed signed and dated the questionnaire June 16, 2010. *See Exhibit B, page 4.* Elsayed then attached a "Timeline of Events" consisting of 21 pages. *See Exhibit B, page 5.* On page 8 of 21, Elsayed details her religious discrimination claims. *See Exhibit B, page 6, 4th full paragraph.* She begins, "A co-worker Sophia Garza Garzon had made discriminatory comments against Arabs, Muslims and those people to a co-worker of mine who happened to be Muslim…." *See Exhibit B, page 6, 4th full paragraph.*

Elsayed was not represented by counsel during the beginning of the administrative phase at the EEOC. She retained counsel. Thereafter, Elsayed amended her Charge on April 12, 2011. *See Exhibit C.* In said Charge, Elsayed checked that she was subjected to religious discrimination. *See Exhibit C.* The EEOC notified UH of Elsayed's original and amended Charge. UH submitted a position statement in response to Elsayed's original and amended Charge.

After 13 months, the U.S. Department of Justice Civil Rights Division authorized this suit on July 18, 2011. *See Exhibit D.* The EEOC's investigative file contains one hundred forty-one (141) pages. *See Exhibit A, footer.* Her file was prepared for publication to the parties' attorneys on June 28, 2011. *See Exhibits A, B, and C footer.* Elsayed filed this instant suit in October of 2011 seeking redress.

The critical function of a charge of discrimination is to "allow the agency [EEOC], in its investigatory and conciliatory role, fully to investigate and attempt to resolve claims of discrimination" and "put the employer on notice of the existence and nature of the charges." *Clayton v. Rumsfeld, 2004 WL 1739465 (C.A.5 (Tex.)) citing Nicol v. Imagematrix, Inc., 767 F.Supp, 744, 752 (E.D. Va.1991) and Manning v. Chevron Chem. Co., 332 F.3d 874, 878-89(5th Cir.2003) respectively.* "The crucial element of a charge of discrimination is the **factual statement contained therein.**" *Clayton v. Rumsfeld, 2004 WL 1739465 (C.A.5 (Tex.)) citing Sanchez v. Standard Brands, Inc., 431 F.2f 455, 462, (5th Cir.1970)(emphasis added).* "Next, the administrative charge must be viewed in its broadest reasonable sense…" *Clayton v. Rumsfeld, 2004 WL 1739465 (C.A.5 (Tex.)) citing Sanchez v. Standard Brands, Inc., 431 F.2f 455, 467, (5th Cir.1970).* Civil complaints may only encompass "discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970). Courts have interpreted the "like or related" requirement to permit claims that could "reasonably be expected to grow out of the charge of discrimination." *Sabrah v. Lucent Technologies, 1998 U.S. Dist. LEXIS 17906,* *5, 1998 WL 792503, 1 (N.D. Tex.) (citing, *Young v. City of Houston, Tex., 906 F.2d 177, 179 (5th Cir. 1990)* (citation omitted)); see also *Reno v.*

*Metropolitan Transit Authority, 977 F. Supp. 812, 818 (S.D. Tex. 1997)* (court found that Plaintiff's sexual harassment claim "would not have been developed and subsequently investigated during the course of the EEOC proceedings").

On June 16, 2010 – some 12 days after her termination and well within the 300 day Statute of Limitations – Elsayed alerted the EEOC that she had a religious discrimination claim against UH, among other claims. The only thing her amended complaint added to same was to check the box on the charge that read "religion" and include the **same** verbiage from her "Timeline of Events" dated June 16, 2010 into the body of the amended charge dated April 12, 2011.

### (2) UH IS NOT ENTITLED TO DISMISSAL ON ELSAYED'S FMLA CLAIMS ON THE BASIS OF INTERFERENCE[1]

Under *§2615(a)(1)*, an employer is prohibited from interfering with or restraining an employee from exercising, or attempting to exercise, their FMLA rights. The term "interference with" is broader than UH represents.  It includes "not only refusing to authorize FMLA leave, **but discouraging an employee from using such leave."** *29 C.F.R. § 825.220(b) (2010)*; *see Bell v. Dallas County, 432 Fed. Appx. 330*; *2011 U.S. App. LEXIS 14212 (2011)* and *Stallings v. Hussmann Corp., 447 F.3d 1041, 1050-51 (8th Cir. 2006)(emphasis added)*. With an interference claim, an employee must show that she was denied her entitlements under the FMLA, **or, that an employer did not respect the employee's FMLA entitlements.** *See Bell v. Dallas County, 432*

---

[1] UH does not seek a dismissal of Elsayed's retaliation claim pursuant to the FMLA.  *Dkt # 7, page 7, Section B.*

*Fed. Appx. 330*; *2011 U.S. App. LEXIS 14212 (2011)* citing *Kauffman v. Fed. Express Corp., 426 F.3d 880, 884 (7th Cir. 2005)*.

Here, UH trampled on Elsayed's FMLA entitlements and did everything possible to discourage her usage thereof. While Elsayed was out on leave under the FMLA, her superiors:

(i) asked Elsayed's peers repeatedly and impatiently, "Has she had the baby yet?" and "What is she waiting on?" Elsayed's peers relayed same to her (*Dkt #1, para 25).*;

(ii) commented that she [Izzy Anderson] carefully planned her delivery so that she could return to work quickly (*Dkt #1, para 26)*; the implication was that Elsayed did not take premeditated steps to return to work quickly after giving birth. This was frowned upon;

(iii) phoned Elsayed, while out on leave per the FMLA, and threatened that if Elsayed did not return to work early from leave, Elsayed would not have any job opportunities[2] in Anderson's unit <u>and</u> that Elsayed would have to seek advancement opportunities in other units. (*Dkt #1, para 27).* Manager Anderson was right. Elsayed did not have job advancement opportunities at UH upon her return from FMLA leave, though promised to her at the end of 2009. In fact, within three (3) short months of her return from FMLA leave, Elsayed was terminated.

(iv) told others during a staff meeting and without being told so by Elsayed, "I don't think Najat [Elsayed] is going to be coming back so we are going to start interviewing for her current position too." (*Dkt #1, para 28)*; and

---

1.      At the end of 2009 and before her FMLA leave, Elsayed applied for the Assistant Director of Customer Service position. Anderson and Loria called Elsayed into Loria's office to inform her that Melanie Morgan was selected for the position. They added that they would like to place Elsayed in a different position but were trying to decide whether or not to do so before or after she returned from maternity leave. Elsayed never received this new position.

(v) greeted Elsayed with hostilities and disparate treatment (e.g., refusal to work from home, etc.) upon Elsayed's return from FMLA leave that would continue until her termination some three (3) months later (*Dkt #1, para 29*).

UH vehemently disrespected and discouraged Elsayed's FMLA rights.

### (3) UH MISSTATES ELSAYED'S PUNITIVE DAMAGE CLAIM <u>THOUGH ELSAYED EXPRESSLY AND VOLUNTARILY DISMISSES SUCH A PRAYER</u>

Elsayed's lawsuit clearly states that she is seeking "Punitive damages in an amount above the minimum jurisdictional limit of the Court, **if applicable."** (emphasis added). *Dkt #1, pg 10, section VII d.* This is standard language in the undersigned's complaints. UH is correct; Elsayed is not entitled to punitive damages against it. Therefore, Elsayed voluntarily withdraws such language in her prayer so as to not cause confusion.

## IV. <u>Conclusion</u>

UH's Motion for Partial [Sic] Dismissal should be denied and this case allowed to proceed in full less Elsayed's punitive damages request and religious discrimination claim, both of which Elsayed voluntarily withdraws.

WHEREFORE, PREMISES CONSIDERED, Elsayed prays that Defendant's Motion for Partial Dismissal be denied as to her FMLA claim, and for such other and further relief to which she may be justly entitled.

Respectfully submitted,

*/s/ **Katrina Patrick***

_____

**Katrina Patrick**
Attorney-in-Charge
State Bar No. 00797218
Federal Bar No. 22038
530 Lovett Street
Houston, Texas  77006
Telephone:  (713) 796-8218
Facsimile:  (713) 533-9607

**ATTORNEY FOR PLAINTIFF**
NAJAT ELSAYED

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of March 2012, this instrument was filed pursuant to the electronic filing protocols applicable in the United States District Court for the Southern District of Texas, Houston Division, and that service will be further made in compliance with said protocols.

*/s/ **Katrina S. Patrick***

_____
Katrina S. Patrick